PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GRIEF, | ) | CASE NO. 4:19-CV-677 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| D.K. WILLIAMS, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 96, 109, 114, 121, |
| | | 127, 129, 131] |

Pending is *Pro se* Plaintiff Christopher Grief's Motion for Preliminary Injunction (ECF No. 96), Motion for Temporary Restraining Order (ECF No. 121), Motion to Strike (ECF No. 114), Motion for Accommodation (ECF No. 129), and Motion for Sanctions (ECF No. 131). Also pending is Defendant[1] Mark K. Williams' Motion for Summary Judgment (ECF No. 109). For the reasons that follow, Plaintiff's motions are denied and Defendant's Motion for Summary Judgment is granted.

## I.  Background

Plaintiff is a prisoner at FSL Elkton, the low security satellite prison affiliated with FCI Elkton.[2]  He is serving a 96-month sentence for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and § 2252(b)(1).  ECF No. 109-2 at PageID #: 489.  Plaintiff is housed at FSL Elkton to allow him to participate in the sex offender management and treatment programs

---

[1] Mark K. Williams is the Warden of FCI Elkton, the facility in which Plaintiff is currently housed.  All other Defendants have been dismissed from the matter.

[2] According to the Bureau of Prisons Inmate Locator (bop.gov/inmateloc/, (last accessed Aug. 26, 2020)) Defendant is incarcerated at FCI Elkton.

(4:19CV677)

available at the facility.[3]  *See* ECF No. 109-1 at PageID #: 482; ECF No. 110-3 at PageID #: 993-94.

Plaintiff initially filed this suit on April 13, 2015 in the United States District Court for the Eastern District of New York against K. Ask-Carlson, Warden of MDC Brooklyn.  ECF No. 1.  Plaintiff sought leave to amend his Complaint on May 7, 2015 (ECF No. 5), on February 29, 2016 (ECF No. 18), and on July 18, 2018 (ECF No. 57).  On March 27, 2019, the case was transferred to the Northern District of Ohio.  ECF No. 67.  The Court designated Plaintiff's Third Amended Complaint the operative Complaint in the instant matter (ECF No. 69) and substituted Warden Mark K. Williams, in his official capacity, as the sole defendant in the action.  *See* Non-document Order, August 12, 2019.  The Court set a case schedule.  ECF No. 77.

Plaintiff, who describes himself as a Buddhist, brings this action against the Federal Bureau of Prisons ("BOP") under the Religious Freedom Restoration Act ("RFRA").  ECF No. 57-1.  The Complaint alleges Defendant has substantially burdened Plaintiff's religious exercise by denying him access to stuffed animals.  *Id*. at PageID #: 190.  Plaintiff alleges he requires the use of stuffed animals to meditate in accordance with his Buddhist faith.  *Id*. at PageID #: 188.

Shortly before the discovery cutoff, Plaintiff filed a Motion for Preliminary Injunction, requesting injunctive relief on his RFRA claim.  ECF No. 96.  Defendant filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Preliminary Injunction, arguing

---

[3] Plaintiff was housed at MDC Brooklyn from October 2014 until March 2018, and at FCI Danbury from March 2018 until September 2018.  Plaintiff arrived at FSL Elkton in September 2018, was transferred to MDC Brooklyn in May 2019, and returned to FSL Elkton later in 2019.  *See* ECF No. 109-3 at PageID #: 504-06; ECF No. 109-1 at PageID #: 469.

2

(4:19CV677)

Plaintiff's RFRA claim fails as a matter of law.  ECF No. 109.  Plaintiff subsequently filed a

Motion to Strike portions of Defendant's Motion for Summary Judgment (ECF No. 114), a

Motion for Temporary Restraining Order seeking further injunctive relief (ECF No. 121), a

Motion for Accommodation (ECF No. 129), and a Motion for Sanctions (ECF No. 131).

## II.  Standards of Review

### A.  Summary Judgment

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F. 3d 868, 873 (6th Cir. 2005).  The moving party is not

required to file affidavits or other similar materials negating a claim on which its opponent bears

the burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial."  *Guarino v. Brookfield Twp. Trs*, 980 F. 2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury."  *Cox. v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  To defeat

the motion, the non-moving party must "show that there is doubt as to the material facts and that

(4:19CV677)

the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Aickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The fact under dispute must be "material," and the dispute itself must be "genuine."  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Id.*  In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict.  *Id.* ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

### B.  Injunctive Relief

The standard governing the issuance of a preliminary injunction and a temporary restraining order is the same.  *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).  A court should only grant a preliminary injunction and/or a temporary restraining order if the movant carries his burden of proving that the circumstances clearly warrant the extraordinary relief.  *Leary v. Daeschner*, 228 F.3d 729, 736-40 (6th Cir. 2000).  A court balances the following factors in determining whether to issue a temporary restraining order and/or preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm absent

4

(4:19CV677)

injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader

public interest.  *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017);

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999,

1009 (6th Cir. 2006).

These four considerations are "factors to be balanced, not prerequisites that must be met."

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir.

2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other

grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)).  "The district judge 'is

not required to make specific findings concerning each of the four factors used in determining a

motion for preliminary injunction if fewer factors are dispositive of the issue.'"  *Id.*  "Although

no one factor is controlling, a finding that there is simply no likelihood of success on the merits

is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

### III.  Analysis

#### A.  Preliminary Matter: Plaintiff's Motion to Strike or Alternatively Reopen Discovery

Plaintiff requests that the Court strike the Declaration of Dr. Marissa Szumigale filed in

support of Defendant's Motion for Summary Judgment, and Defendant's argument that

preventing Plaintiff from accessing stuffed animals meets a "compelling governmental interest"

and is the "least restrictive means" of achieving that interest.  ECF No. 114.  In the alternative,

Plaintiff requests that the Court reopen discovery on the issue of whether Defendant has met its

burden to defeat his RFRA claim.  *See id*.

5

(4:19CV677)

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.  *See* Fed. R. Civ. P. 12(f) (limited to striking pleadings or portions of pleadings).  If a brief or affidavit refers to matters a court should not consider at summary judgment (such as inadmissible evidence), while a court is free to exercise its discretion, the usual recourse is for the court simply to disregard those matters, not to strike them.  *Lombard v. MCI Telecomm. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) (citing *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)).

Accordingly, Plaintiff's Motion to Strike is denied as unnecessary.  The Court considers whether it should disregard the Szumigale Declaration and Defendant's argument that it has a "compelling governmental interest" in denying Plaintiff's religious accommodation and has imposed the "least restrictive means."

### 1.  The Szumigale Declaration

The Court has broad discretion in ruling on the admissibility of expert testimony, including at the summary judgment stage.  *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005); *see also* Fed. R. Evid. 702 advisory committee's note (2000) (noting rejection of expert testimony is the "exception rather than the rule" and trial courts have broad discretion to decide whether or not to admit expert testimony).

Rule 56(c)(4) requires that an affidavit used to support or oppose a summary judgment motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c).  An expert opinion offered at the summary judgment stage is held to the same standard

(4:19CV677)

as other declarations, as well as to Federal Rule of Evidence 702, which governs the admissibility

of expert testimony.  Fed. R. Evid. 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reasonably applied the principles and methods
> to the facts of the case.

To satisfy both Fed. R. Civ. P. 56(c) and Fed. R. Evid. 702, the Sixth Circuit has

instructed that, in the context of a summary judgment motion, an expert opinion "must be more

than a conclusory assertion about ultimate legal issues." *Brainard*, 432 F.3d at 663 (internal

citations omitted).  "Moreover, an expert opinion must set forth facts and, in doing so, outline a

line of reasoning arising from a logical foundation." *Id.* (additional citations omitted).

Plaintiff argues Dr. Szumigale's Declaration, attached to Defendant's Motion for

Summary Judgment, violates Federal Rule of Evidence 702 by failing to set forth factual support

for Dr. Szumigale's opinions.  ECF No. 114-1.  The Court disagrees.  Dr. Szumigale offered

testimony based on personal knowledge and observations she obtained during her course of care

and treatment of Plaintiff.  *See* ECF No. 110-3 at PageID #: 994-96 [SEALED].  Her declaration

articulates the facts underlying her opinions and attaches records, including her own treatment

notes, in support.  *See id*. at PageID #: 999-1047 [SEALED].  Dr. Szumigale's declaration also

aids the Court's understanding of Plaintiff's motivations for seeking stuffed animals and other

animal-related paraphernalia while in custody.

(4:19CV677)

The Court concludes that Dr. Szumigale's opinion satisfies both Fed. R. Civ. P. 56(c) and

Fed. R. Evid. 702, and she is competent regarding the matters discussed in her declaration.

Accordingly, the Szumigale declaration is relevant and admissible.

### 2. Defendant's "Compelling Governmental Interest/Least Restrictive Means" Argument

Plaintiff asks that the Court disregard Defendant's argument, in support of its motion for

summary judgment, that it has a compelling governmental interest in denying Plaintiff's religious

accommodation and has imposed the least restrictive means in achieving that interest.  ECF No.

114.  Plaintiff argues he had no notice that this defense was at issue in the case.  *See* ECF No.

114-1.

Plaintiff's bid to convince the Court he was without notice of the Government's argument

is disingenuous.  The plain language of the RFRA statute put Plaintiff on notice that Defendant

would make a "compelling interest/least restrictive means" argument.[4]  *See* 42 U.S.C. §

2000bb_1.  Defendant also directed Plaintiff to its forthcoming argument in its Answer.  *See* ECF

No. 70 at PageID #: 253 ("Plaintiff's claims are subject to, and limited by, the provisions and

principles of the Religious Freedom Restoration Act[.]").  Furthermore, Plaintiff's discovery

requests demonstrate his awareness of Defendant's statutory defense.  *See* ECF No. 116-1 at

PageID #: 1111, ¶ 1 (in which Plaintiff asked Defendant to state "each and every reason you have

---

[4] The statute explicitly provides that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden . . . is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb_1.

(4:19CV677)

for refusing to accommodate Grief's request including, but not limited to, the *compelling government interest* furthered by your refusal.").

The Court denies Plaintiff's baseless request that it disregard Defendant's argument stemming from its statutory defense under RFRA.[5]

### 3. Discovery Will Not Be Reopened

In the alternative, Plaintiff requests that the Court reopen discovery on the issue of whether Defendant has met its burden under the RFRA statute (to show a "compelling governmental interest" and the "least restrictive means"). ECF No. 114.

In considering a motion to reopen discovery, the Court considers (1) when the moving party learned of the issue that is the subject of discovery; (2) how reopening discovery would affect the ruling below; (3) the length of the previous discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. *Audi AG v. D'Amato*, 469 F.3d 534, 541 (6th Cir. 2006).

Plaintiff has been aware of Defendant's statutory defense under RFRA since at least the beginning of discovery. *See* ECF No. 116-1 at PageID #: 1111.  While both parties had ample opportunity to pursue further evidence on this issue, Plaintiff chose not to do so.  Before the

---

[5] In Plaintiff's Motion for Sanctions, he reiterates his request that the Court disallow Defendant from presenting as a defense that its actions are the least restrictive means of furthering a compelling governmental interest. ECF No. 131.  Plaintiff's Motion for Sanctions is denied for the reasons explained in the Court's denial of Plaintiff's Motion to Strike.

(4:19CV677)

filing of his Motion to Strike on April 22, 2020, Plaintiff made no efforts to conduct further

discovery (such as depositions), nor did he timely seek an extension of the schedule.[6]

Plaintiff provides no reasonable explanation why the more detailed information he now

seeks was not and could not have been requested.  *See* ECF Nos. 114-1, 114-2.  Plaintiff was not

diligent in pursuing further discovery on this issue.[7]  Accordingly, his alternative request to

reopen discovery is denied.

### B.  Defendant's Motion for Summary Judgment

RFRA provides a statutory claim for individuals whose religious exercise is substantially

burdened by the government.  The statute states that the "Government shall not substantially

burden a person's exercise of religion even if the burden results from a rule of general

applicability," unless the government can demonstrate that "the burden to the person (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of

furthering that compelling governmental interest."  42 U.S.C. § 2000bb_1; *Cutter v. Wilkinson,*

*423 F.3d 579, 582 (6th Cir. 2005).*

RFRA's protections apply only if the plaintiff makes out a prima facie case: an "initial

showing" that the challenged policy "imposes a substantial burden on his religious exercise."

*Hoevenaar v. Lazaroff,* 422 F.3d 366, 368 (6th Cir. 2005); *see also*

---

[6]  The discovery period in this case was generous, from August 12, 2019 to
January 31, 2020.  ECF Nos. 77, 97.

[7] *See Schatzman v. Cnty. of Clermont, Ohio,* No 99-4066, 2000 WL 1562819, at
*11 (6th Cir. Oct. 11, 2000) (unpublished) (finding district court appropriately denied
motion to reopen discovery when dispositive motions were fully briefed and discovery
had been closed for nearly five months).

(4:19CV677)

*New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 589 (6th Cir. 2018) (finding a

defendant substantially burdens a person's exercise of religion by forcing the person to choose

between engaging in conduct that violates sincerely held religious beliefs and facing serious

consequence).  When a substantial burden is found, the challenged policy survives only if the

government shows that it furthers a "compelling governmental interest" and is the "least

restrictive means" of doing so.  § 2000bb 1(b).

### 1.  "Sincerely Held" Religious Belief

The governmental action in question must burden a "sincerely held" religious belief as

opposed to "a philosophy or way of life."  *Gen. Conference Corp. of Seventh-Day Adventists v.*

*McGill*, 617 F.3d 402, 410 (6th Cir. 2010); *see also New Doe Child #1*, 891 F.3d at 587 (finding

RFRA challenge must be sincerely based on a religious belief and "not some other motivation")

(quoting *Holt v. Hobbs*, 574 U.S. 352, 360 (2015)).

The theological legitimacy of a particular religious practice is not in question under

RFRA.  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) (noting the question of

"whether the religious belief asserted in a RFRA case is reasonable" is one "that the federal

courts have no business addressing").  The *sincerity* of a plaintiff's belief in a particular religious

practice, however, is a critical part of plaintiff's prima facie case.  *See Tagore v. United States*,

735 F.3d 324, 328 (5th Cir. 2013) (finding plaintiff's sincerity in espousing the given practice is

largely a matter of individual credibility).

Plaintiff alleges that, as a Buddhist, he requires the use of stuffed animals to reach

enlightenment through meditation.  *See* ECF No. 109-3 at PageID #: 517-25.  He acknowledges

11

(4:19CV677)

stuffed animals are not part of the tenets of Buddhism, but avers that stuffed animals are essential to his spiritual meditative practices. ECF No. 96-3; *see also* ECF No. 110-2 at PageID #: 855 [SEALED] (expressing belief that "the enlightened spirit [of Buddha] can embody the stuffed animal to help" Plaintiff achieve spiritual enlightenment).

The record undermines the sincerity of Plaintiff's asserted religious beliefs and reveals he has at least two "other motivations" for seeking stuffed animals: to address a disability and to fulfill his sexual desires.

Plaintiff conceded during his deposition that prior to entering federal custody, he did not consider the practice of using stuffed animals to be a religious practice. *See* ECF No. 110-2 at PageID #: 903 [SEALED]. Rather, he required stuffed animals to manage the sensory aspects of his Autism Spectrum Disorder. ECF No. 110-2 at PageID #: 879 [SEALED]. Other evidence in the record corroborates Plaintiff's use of stuffed animals for this purpose. *See* ECF No. 109-4 at PageID #: 676 (10/25/2014 email from Plaintiff to BOP Psychology Services requesting stuffed animals to "accommodate [his] mental health needs" because it "has been [his] most useful and healthy thing to do when [he is] stressed."); *see also* ECF No. 109-4 at PageID #: 683 (11/29/2018 email from Plaintiff to BOP Psychology Services in which he requested a "weighted blanket" and "a stuffed animal" to "immensely decrease [his] anxieties and pains and improve [his] functioning."). It was not until after Plaintiff's requests for a disability accommodation were rejected by BOP that he re-characterized his need for stuffed animals as being based in a religious adherence. *See* ECF No. 96-4 (10/30/2019 email from Plaintiff to BOP Religious Services requesting stuffed animal for use as a "religious item").

12

(4:19CV677)

Plaintiff also has a history of using stuffed animals, live animals, and animal paraphernalia to achieve sexual gratification.  ECF No. 110-3 at PageID #: 994-96 [SEALED].  Dr. Marissa Szumigale, licensed clinical psychologist and the Sex Offender Management Program ("SOMP") Coordinator at FSL Elkton, assessed Plaintiff after having completed a clinical assessment of Plaintiff, and reviewed Plaintiff's pertinent files, including his pre-sentence investigation report.  *Id*. [SEALED].  Szumigale's assessment reveals Plaintiff obtains sexual arousal from paraphilia, a condition characterized by abnormal sexual desires.  *Id*. at PageID #: 995 [SEALED].  Paraphilic disorders are recurrent, intense, sexually arousing fantasies, urges, or behaviors that involve inanimate objects, children, or non-consenting adults.  *Id*. [SEALED].  Plaintiff suffers from at least two forms of paraphilia: pedophilia (i.e., sexual arousal from prepubescent children) and zoophilia (i.e., sexual arousal from live animals).  *Id*. [SEALED].  In her declaration, Szumigale discussed Plaintiff's sexual interest in children, stuffed animals, and animals.  She recounted his use of stuffed animals to masturbate and discussed an instance, prior to his incarceration, when Plaintiff performed violent and fatal sexual acts on a live rat.  *See id*. at PageID #: 994-95 [SEALED].

Szumigale determined that Plaintiff's zoophilic tendencies have not subsided.  *Id*. at PageID #: 995-96 [SEALED].  Independent evidence supports her findings.  While incarcerated at FSL Elkton, Plaintiff obtained a crocheted My Little Pony stuffed animal and used it to masturbate.[8]  *Id*. at PageID #: 869-80, 996-97, 1047 [SEALED].  The stuffed animal was

---

[8] When asked during his deposition what he did with the stuffed animal, Plaintiff replied "I may have, you know, rubbed it there a little bit.  And then just, you were,

(continued...)

13

(4:19CV677)

confiscated.  On another occasion, FSL Elkton staff searched Plaintiff's living quarters, located

and confiscated sexually provocative images of animals.  *See id*. at PageID#: 996-97 [SEALED];

ECF No. 109-1 at Page ID#: 479.

A religious belief under RFRA may not be "merely a pose adopted to acquire material

that would otherwise be banned."  *See Tanksley v. Litscher*, No. 15-CV-126-jdp, 2017 WL

3503377, at *4 (W.D. Wis. Aug. 15, 2017) (upholding prison's prohibition on Tarot cards

containing nudity) *aff'd*, 723 F. App'x 370 (7th Cir. 2018).  When viewed in the light most

favorable to Plaintiff, the evidence suggests his desire for stuffed animals is not rooted in a

sincerely held religious belief.[9]  Plaintiff seeks access property that is otherwise prohibited to him

generally  as an inmate  and individually given his sexual offender characteristic.

Accordingly, the Court finds that Plaintiff has not made the required initial showing that

his request for stuffed animals is related to a "sincerely held" religious belief.

### 2.  "Substantial Burden"

As part of the substantial burden analysis, the Sixth Circuit considers whether an inmate's

religion actually requires the particular religious practice at issue.  *See United States v. Barnes*,

677 F. App'x 271, 276 (6th Cir. 2017) (finding no substantial burden when criminal defendant

failed to make an adequate showing that growing marijuana and donating it is required by his

---

[8](...continued)
masturbated.  I've occasionally masturbated here, but that was only like twice while I had
[the pony]."  ECF No. 110-2 at PageID #: 880 [SEALED].

[9] His past and recent history of using stuffed animals to engage in sexual acts
undercuts any alleged religious motivation for requesting the items.

14

(4:19CV677)

religion).  While it is not the place for a court to decide the "centrality of beliefs. . . to canonical

texts," the Court can determine whether a particular practice is required by a religion as part of

the substantial-burden analysis, which asks whether precluding a practice would be a substantial

burden on practicing the religion.  *Id.* (quoting *Haight v. Thompson*, 763 F.3d 554, 567 (6th Cir.

2014)).

 Evidence suggests the use of stuffed animals is a personal belief of Plaintiff's and not one

critical to practicing his Buddhist faith.[10]  Plaintiff has offered no evidence that being unable to

meditate in front of stuffed animals would make him unable to practice Buddhism, or would

force him to choose between "obeying the law and practicing his religion."[11]  *Id.*  Plaintiff is not

barred from accessing Buddhist services at FSL Elkton, nor is he denied the opportunity to

meditate or access books on Buddhism that do not contain images of animals.

 Accordingly, the Court finds Plaintiff has not established a "substantial burden" on his

sincerely held religious beliefs.

### 3.  Compelling Governmental Interest and Least Restrictive Means[12]

---

[10] Notwithstanding, even if stuffed animals were central to the exercise of Plaintiff's religion, he has not shown that inaccessibility to stuffed animals substantially burdens his religious practice.

[11] In fact, Plaintiff identifies only two practices necessary to the exercise of his religion: meditation and doing good acts.  ECF No. 110-2 at PageID #: 846-49 [SEALED].  The record shows that he is fully able to, and regularly does, engage in these practices without the use of stuffed animals.  *See id.* at PageID #: 906 [SEALED].

[12] Plaintiff has failed to make a prima facie showing under RFRA, entitling Defendant to summary judgment.  The Court nevertheless examines Defendant's burden under RFRA.

(4:19CV677)

Even if Plaintiff's desire for stuffed animals were based in a sincerely held religious belief, and the inability to possess such items posed a substantial burden, the government may defeat Plaintiff's RFRA claim by showing that application of the substantial burden is the "least restrictive means of furthering [a] compelling governmental interest." § 2000bb-1(b)(1)(2).  To establish it is using the least restrictive means, the government must "show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 864 (citation and internal quotation marks omitted).

Defendant rejected Plaintiff's requests for stuffed animals because allowing him to keep such objects would jeopardize his rehabilitation, increase his likelihood of recidivism, and threaten prison security.  *See* ECF No. 109 at PageID #: 483.  All three concerns have been upheld as legitimate governmental interests.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (listing rehabilitation among "valid penological objectives"); *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (recognizing "the legitimate government interest" of reducing recidivism); *Cutter v. Wilkinson*, 544 U.S. at 717 (recognizing prison safety and security are government interests which may outweigh an inmate's claim to a religious accommodation); *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999) (recognizing "legitimate government interests in maintaining security and allocating prison resources").

As noted, Plaintiff was convicted of receipt of child pornography and was ultimately transferred to FSL Elkton to access its sex offender management and treatment program.  ECF No. 110-3 at PageID #: 994 [SEALED].  Professionals tasked with treating Plaintiff and

16

(4:19CV677)

administering his conditions of confinement found Plaintiff's access to stuffed animals  items

closely associated with children  places him at increased risk of re-offending.[13]  Throughout his

time at Elkton, Plaintiff has been informed of the "risk-relevant" nature of stuffed animals and

images of animals.  *Id*. at PageID #: 996 [SEALED].  Despite these instructions, the

rehabilitative supports in place, and resources at Plaintiff's disposal, Plaintiff was recently

assessed as having exhibited "no insight into his risk relevant thoughts or behaviors."  *Id*. at

PageID #: 997 [SEALED].[14]

Granting Plaintiff's requests to access stuffed animals would not only damage the

Warden's rehabilitation efforts, it would increase Plaintiff's overall risk of re-offending.

Plaintiff, lacking "the insight and will to abstain from behaviors that increase the likelihood of

him committing another crime" cannot have access to a stuffed animal: be it on his person, in his

proximity, or from afar.  *Id*. [SEALED].  Animal imagery, by itself, incites his paraphilic desires.

*See id*. [SEALED].  Defendant has met its burden in showing that the governmental interests of

---

[13] Based on Plaintiff's personal history and characteristics, he poses a high risk of re-offense.  Access to risk-relevant objects, such as stuffed animals, while at FSL Elkton stymies efforts toward his rehabilitation.  *See* ECF No. 110-3 at PageID #: 998 [SEALED] ("[T]he correlation between his deviant sexual interest in animals and stuffed animals relates back to the societal fact that stuffed animals are geared towards children and strongly associated with childhood.  These notions and his lack of insight, create an elevated risk of sexually re-offending against children.").

[14] The record indicates that although Plaintiff initially expressed an interest in participating in the BOP's sex offender treatment program in February of 2019, he voluntarily withdrew from the program on April 17, 2019 and has denied any interest in attempting to participate again.  *See* ECF No. 110-3 at PageID #: 996 [SEALED].

(4:19CV677)

rehabilitation and preventing recidivism are sufficiently "compelling" to warrant a substantial

burden to Plaintiff, and that it lacks other means of achieving these interests.

Defendant has also met its burden regarding the sufficiently compelling interest of prison

security.  Permitting Plaintiff to access stuffed animals would unquestionably undermine the

safety and security of Plaintiff, other inmates, and staff at FSL Elkton.  Plush objects can be

easily manipulated to conceal dangerous contraband including weapons and drugs.[15]  The Court

finds that preventing Plaintiff from accessing stuffed animals is the least restrictive means of

ensuring inmate and staff safety at FSL Elkton is achieved.

Plaintiff's RFRA claim fails because any such burden was imposed in furtherance of

Defendant's compelling governmental interests and was implemented *via* the least restrictive

means available.

### B.  Administrative Remedies

Section 1997e of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action

shall be brought with respect to prison conditions under Section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although

prisoners "are not required to specially plead or demonstrate exhaustion in their complaints,"

---

[15] Plaintiff is not banned from possessing BOP-approved objects which would
help him meditate in line with his Buddhist beliefs.  He can request, for example, plastic
prayer beads which have been deemed safe for inmate possession.  ECF No. 96-6 at
PageID #: 402.

18

(4:19CV677)

*Jones v. Bock*, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211.

Although Plaintiff exhausted his administrative remedies regarding disputes over his possession of stuffed animals at MDC Brooklyn and FCI Danbury, he concedes he has not done so at FSL Elkton. *See* ECF No. 110-2 at PageID #: 918 [SEALED].  A prisoner's subsequent transfer to another prison facility does not relieve him of his obligation to administratively exhaust claims at the facility where the claims arose. *Brock-Butler v. Parker*, No. 16-6210, 2017 WL 7116972, at *3 (6th Cir. Sept. 21, 2017) (citation omitted).

Accordingly, in addition to dismissal on the merits, Plaintiff's claim is subject to dismissal for failure to exhaust his administrative remedies at FSL Elkton.

### C.  Plaintiff's Motions for Injunctive Relief

Plaintiff's motions for injunctive relief necessarily fail because Plaintiff cannot prevail on the merits[16] of his RFRA claim.  As noted, Plaintiff is unable to establish even a prima facie case of a RFRA violation.

Plaintiff is similarly unable to meet the remaining factors warranting injunctive relief. The Court determined that Plaintiff's motivations for stuffed animals are non-religious in nature. Thus, he cannot show irreparable harm absent an injunction.  The balance of the harms and the public interest also weigh against the issuance of an injunction; there is a strong public interest in

---

[16] The Court may deny injunctive relief on this basis alone.  *See Certified Restoration*, 511 F.3d at 542.  ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'")

19

(4:19CV677)

the rehabilitation of sexual offenders and overall prison security which bodes in favor of denying injunctive relief.

As Plaintiff has not demonstrated entitlement to either extraordinary remedy, Plaintiff's Motion for Preliminary Injunction (ECF No. 96) and Motion for Temporary Restraining Order (ECF No. 121) are denied.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 109) is granted.[17]  Plaintiff's Motion for Preliminary Injunction (ECF No. 96), Motion to Strike (ECF No. 114), Motion for Temporary Retraining Order (ECF No. 121), and Motion for Sanctions (ECF No. 131) are denied.[18]

IT IS SO ORDERED.


 August 26, 2020                        /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge

---

[17] Defendant's motion to file an amended reply in support of Defendant's Motion for Summary Judgment (ECF No. 127) is also granted.

[18] Plaintiff's motion for accommodation (ECF No. 129) is also denied.  Plaintiff has litigated this case *pro se* and has therefore benefited from liberal construction of his pleadings and all filings.  *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that courts must hold pleadings of *pro se* litigants to less stringent standards than formal pleadings drafted by lawyers)).